# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

KAREN HIGGINBOTHAM,

   Petitioner,

v.           Case No. 3:20-cv-811-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

   Respondents.

_____

## **ORDER**

### I. **Status**

Petitioner Karen Higginbotham, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. See Doc. 1. Petitioner challenges two state court (Duval County, Florida) judgments rendered in State v. Higginbotham, Nos. 2015-CF-2675 and 2015-CF-5286. Petitioner is serving a cumulative eighteen-year term of incarceration. Respondents responded. See Doc. 12 (Resp.).[1]

---

[1] Attached to the Response are various exhibits. The Court refers to the exhibits as "Resp. Ex."

Petitioner declined to file a reply. <u>See</u> Doc. 14. This case is ripe for review.[2]

## II.   <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is not necessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal

3

quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of

4

reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

The two-part <u>Strickland</u> test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. <u>See</u> <u>id.</u> at 56-59; <u>Lynch v. Sec'y Fla. Dept. of Corr.</u>, 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>,474 U.S. at 59 (footnote omitted); <u>Lynch</u>, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.   <u>Procedural History and Facts</u>

On March 3, 2016, Petitioner entered a plea of guilty in 2015-CF-2675 to eighteen counts of grand theft (counts one through eighteen) and one count of schemes to defraud (count nineteen). Resp. Ex. B at 38. That same day, Petitioner entered a plea of guilty in 2015-CF-5286 to one count of schemes to defraud (count one) and ten counts of grand theft (counts three through twelve). <u>Id.</u> In exchange for her guilty pleas, the state agreed to nol pros count two in 2015-CF-5286. <u>Id.</u> at 86.

On May 4, 2016, the trial court sentenced Petitioner in 2015-CF-2675 to a five-year term of incarceration as to counts one through eighteen, and a concurrent eighteen-year term of incarceration as to count nineteen. Resp. Ex. B at 54-59. That same day, the trial court sentenced Petitioner in 2015-CF-5286 to an eighteen-year term of incarceration on count one, and a concurrent five-year term of incarceration as to counts three through twelve. <u>Id.</u> at 40-46. The trial court further ordered that the sentences imposed in 2015-CF-2675 run concurrent to the sentences imposed in 2015-CF-5286. <u>Id.</u> at 45. Petitioner, with help from appellate counsel, sought a direct appeal of each judgment, <u>id.</u> at 83. The First District Court of Appeal then consolidated the two appeals for review.[3]

---

[3] The direct appeals were consolidated for purposes of travel and assignment to the same panel of judges for disposition but proceeded on separate records and briefs. Resp. Ex. D.

Resp. Ex. D; see also Higginbotham v. State, Nos. 1D16-2523 (direct appeal of 2015-CF-5286); 1D16-2524 (direct appeal of 2015-CF-2675). On August 30, 2017, the First DCA affirmed both judgments with citation. Resp. Ex. D.[4]

Petitioner later filed an identical pro se Florida Rule of Criminal Procedure 3.850 motion in both cases. Resp. Ex. J at 6. After the state responded, id. at 20-95, the trial court summarily denied the Rule 3.850 motion, id. at 96-99. Petitioner appealed the trial court's denial, and the First DCA per curiam affirmed the order without a written opinion. Resp. Ex. M. The Petition followed.

## IV.  Analysis

### A. Ground One

Petitioner argues that double jeopardy precludes her convictions for schemes to defraud and grand theft because the convictions are based on common allegations. Doc. 1 at 7.

Petitioner, with help from appellate counsel, raised this issue in each of her initial briefs on direct appeal. Resp. Ex. C. In its answer brief, the state argued Petitioner was precluded from raising a double jeopardy argument because her convictions stemmed from a negotiated and bargained-for plea

---

[4] Because the direct appeal briefs and both First DCA opinions are identical, Respondents have only included in their Response exhibits the documents from Higginbotham, 1D16-2523. Resp. at 5 n. 2.

agreement with the state. Id. at 8. Petitioner filed a reply, arguing she did not enter her pleas in exchange for a bargained-for sentence but plead "straight to the court." Resp. Ex. F. The First DCA found Petitioner's argument lacked merit, stating as follows as to each appellate case:

> AFFIRMED. See Novaton v. State, 634 So. 2d 607, 609 (Fla. 1994) (double jeopardy claims waived when defendant enters into negotiated plea agreement).

Resp. Ex. G; Higginbotham v. State, 230 So. 3d 70 (Fla. 1st DCA 2017). The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

The double jeopardy clause of the Fifth Amendment protects "against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165 (1977) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). In Novaton, 634 So. 2d at 607, the Florida Supreme Court, relying on United States v. Broce, 488 U.S. 563 (1989), discussed the "general rule" that "a plea of guilty and subsequent adjudication of guilt precludes a later double jeopardy attack on the conviction and sentence." Novaton, 634 So. 2d at 609.

> The [Florida Supreme Court] explained, however, an exception to this rule existed, where (1) the plea was general, rather than negotiated; (2) the double jeopardy violation was apparent from the record; and (3) nothing

in the record indicated a waiver of the double jeopardy violation. <u>Id.</u> That exception did not apply in <u>Novaton</u>, because the defendant had entered into a bargained-for plea agreement. <u>Id.</u> In its decision, however, the state court noted that "Novaton neither request[ed] that [his plea] agreement be vacated nor claim[ed] that it was invalid because it was not voluntarily and intelligently entered into." <u>Id.</u>

<u>Calhoun v. Sec'y, Fla. Dep't of Corr.</u>, 604 F. App'x 968, 971 (quoting <u>Novaton</u>, 634 So. 2d at 609)).

Here, Petitioner argues that she did not waive any double jeopardy claim because her pleas were not negotiated but were "straight up" or "open pleas" to the court with no agreed upon disposition. Doc. 1 at 7. While Petitioner's plea form states her pleas in each case were entered "straight to the Court," the plea form is titled "Plea of Guilty and Negotiated Sentence" and nothing in her current claim, nor her claim presented on direct appeal, suggests she challenges the voluntary nature of those pleas. Resp. Ex. B at 38.

Notably, during her plea colloquy, the trial court explained that Petitioner was entering a "plea and negotiated sentence in a very small way, meaning the negotiated portion is that the State agreed to drop Count 2 in case 16-2015-CF-005286." Resp. Ex. B at 86. Petitioner then acknowledged on the record in open court that she understood that by entering her pleas, she waived certain constitutional rights, including her right to have the state prove the charges against her beyond a reasonable doubt. <u>Id.</u> at 90-92. The state then

10

presented the following factual basis to support Petitioner's pleas:

[O]n Case 2015-CF-2675.

As to Counts 1 through 18, the State would be prepared to demonstrate that on the date listed in each count, in Duval County, State of Florida, the defendant, while employed at Barco-Duval Engineering, wrote checks, essentially, to herself. Each of those checks was in the amount greater than $300, but less than an amount of $20,000. Most of them ranged between $5,000 and $9,000.

As to Count 1, a check was written on May 31st, 2013. As to Count 2, July 8th, 2013. As to Count 3, August 19th, 2013. As to Count 4, a second check, August 19th, 2013. As to Count 5, September 19th of 2013. As to Count 6, November 27th of 2013. As to Count 7, March 1st of 2014. As to Count 8, April 2nd of 2014. As to Count 9, April 18th of 2014. As to Count 10, May 1st of 2014. As to Count 11, May 22nd of 2014. As to Count 12, May 23rd of 2014. As to Count 13, June 10th of 2014. As to Count 14, July 15th of 2014. As to Count 15, August 13th of 2014. As to Count 16, September 26th of 2014. As to Count 17, December the 14th of 2014. As to Count 18, January 9th of 2015.

And as to Count 19, schemes to defraud , Your Honor, in addition to and separate from the aforementioned checks, this defendant, during the dates in question, specifically alleged to be between December 31st, 2010 and March 18th of 2015, transferred by automatic payment 81 payments to a VISA account from the business to her own account. And the total loss to the engineering company, between the checks, as I've referenced, as well as the -- and, I'm sorry, she -- 81 payments to a VyStar VISA, 89 transactions to a Capital One VISA, and then the 18 checks, the grand total being approximately $464,857.17.

11

As to Case Number 2015-CF-5286, this involved a separate and additional company, specifically K&G Construction, Your Honor, and I'll begin as to Counts 3 through 12.

In this case, again, there were checks and payments to Bank of America, each in the amount greater than $300 but less than $20,000. All occurred in Duval County, State of Florida. And as it relates specifically to Count 3, between June 13th of 2012 and June 9th of 2015. As to Count 4, between February 20th of 2014 and June 9th of 2015. As to Count 5, between March 5th of 2014 and June 9th of 2015. As to Count 6, between June 16th of 2014 and June 9th of 2015. As to Count 7, between July 18th of 2014 and June 9th of 2015. As to Count 8, between August 4th of 2014 and June 9th of 2015. As to Count 9, between September 4th, 2014 and June 9th, 2015. As to Count 10, between October 3rd, 2014 and June 9th of 2015. As to Count 11, between November 18th of 2014 and June 9th of 2015. And as to Count 12, between December 5th of 2014 and June 9th, 2015.

In addition, as to Count 1, which occurred between June 13th of 2012 and June 9th of 2015, the records document and reflect that there were 107 automatic payment transactions from the business checking account of that company to a VyStar VISA belonging to the defendant; 70 additional automatic payment transactions to a Capital One VISA account, and the co-monthly payments to Bank of America as it relates to the account.

In essence, Your Honor, the total loss to K&G Construction is approximately $405,675.07.

Resp. Ex. B at 94-97. The following exchange then occurred:

THE COURT: Mr. Mantei, as to Count 2 in Case 5286,

12

will that be a nolle pros at the time of sentencing?

MR. MANTEI: It will, Your Honor. Nolle pross as to that count, code 30.

THE COURT: Is that today or at sentencing?

MR. MANTEI: I'll do it today, since, actually, I think it would arguably be subject to a double jeopardy attack, so I don't mind doing that today.

THE COURT: And so would you please so state that on the record.

MR. MANTEI: I will do that, yes. Nolle pros code 30 to Count 2 in Case 2015-5286.

THE COURT: Ms. Higginbotham, do you all understand all the charges against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: And are you fully comfortable proceeding forward with your pleas of guilty to all counts in Case 2675 and all remaining counts in Case 5286, as Count 2 has been dropped?

THE DEFENDANT: Yes, ma'am.

Id. at 97-98. The parties then discussed Petitioner's sentencing guidelines and advised the trial court that Petitioner faced a minimum sentence of 119.7 months incarceration and a maximum sentence of 200 years incarceration. Id. at 114. Petitioner acknowledged her sentence exposure and explained that she understood her sentencing hearing would be conducted at a future date. Id. at 116. The trial court then accepted her guilty pleas, finding they were entered

knowingly, voluntarily, and with full understanding of the consequences therefrom. Id. at 116-18.

The factual basis, read into the record and which Petitioner agreed to under oath, demonstrates the charges were not based on the same conduct. The grand theft counts were based on Petitioner using checks to deprive the victims of funds, and each scheme to defraud count was based on Petitioner automatically transferring funds to her bank accounts. Petitioner's own statements at the plea hearing confirm she understood the charges and the consequences of pleading guilty to those charges. In exchange for her pleas of guilty, the state agreed to nol pros count two in 2015-CF-5286. Thus, double jeopardy does not apply to bar any of the charges to which Petitioner pleaded guilty. While the record suggests that count two of 2015-CF-528 may have presented a double jeopardy issue, during the sentencing hearing, trial counsel explained that he was the one who noticed count two's potential double jeopardy problem. Resp. Ex. B at 109. And according to trial counsel, when he communicated that issue to the state during plea discussions, the state agreed to drop that charge and recalculate the sentencing guidelines accordingly. Id. To that end, at the time of her pleas, Petitioner knew she was facing a maximum 200-year term of incarceration, but as more fully explained in Ground Two, she strategically pled guilty "straight to the court" and without an agreed-upon

14

disposition, so she could request the imposition of a downward departure sentence. <u>See</u> Resp. Ex. B at 146.

Petitioner's guilty pleas contained negotiated and bargained-for aspects. Based on that record evidence, the Court is not inclined to disregard the deference owed to the state court in adjudicating this issue, nor is it convinced that Petitioner entered those pleas involuntarily rendering them invalid. Thus, upon review of the record, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings. <u>See, e.g.</u>, <u>Howze v. Sec'y, Dep't of Corr.</u>, No. 3:15-cv-938-J-39PDB, 2017 WL 5573183, at *5 (M.D. Fla. Nov. 20, 2017) (finding that the petitioner had the opportunity to contradict the indictments based on double jeopardy but his opportunity was foreclosed once he entered his guilty pleas to those indictments); <u>Maynor v. Sec'y, Dep't of Corr.</u>, No. 8:13-cv-3146-T-36TBM, 2016 WL 718899, at *3-*4 (M.D. Fla. Dec. 12, 2016) (finding that the petitioner waived his double jeopardy claim by entering his guilty pleas when the factual basis of each count of robbery involved different victims and conduct).[5] Ground One is denied.

---

[5] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  <u>See</u> <u>Stone v. First Union Corp.</u>,

15

**B. Ground Two**

Petitioner argues that her trial counsel was ineffective for failing to advise her of the state's plea offer and instead misadvising her that an open plea of guilty or trial were her only options. Doc. 1 at 9.

Petitioner raised this claim in her Rule 3.850 motion filed in state court. Resp. Ex. J at 9-11. The state filed a response to the motion, arguing this claim should be denied:

> The record at the Defendant's sentencing hearing held on March 2, 2016 refutes her claim that her attorney failed to present her with a favorable offer. The record demonstrates that the State had offered the Defendant a 15 to 25 year range in prison. The Defendant, however, rejected this offer and chose to plea to the mercy of the court hoping that the sentence would be closer to the guidelines of 10 years. The record also shows that in spite of her counsel's advice to present a counteroffer [of] 15 years, the Defendant instead chose to enter a plea to the Court. It is difficult to see how the Defendant can now claim that she was never presented with the 15 year offer by the State. (See State's Ex. A: Pages 5 to 10 of Court Proceedings held on March 2, 2016).

Resp. Ex. J at 21.[6] The trial court adopted the state's response and summarily denied this claim, explaining it "carefully reviewed the response and f[ound]

---

371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

[6] The trial court sentenced Petitioner on May 4, 2016, not March 2, 2016, as the state alleged in its Rule 3.850 response.

that it address[ed] [the] claim with both factual and legal accuracy" and "therefore [found] it appropriate and judicially efficient to adopt the State's response as the [trial] [c]ourt's findings." Id. at 98. Petitioner appealed arguing that a transcript of the March 2, 2016, hearing that the state relied on in its response, and that the trial court ultimately relied on in denying the claim, was not included in the state court record. Resp. Ex. K. Petitioner also moved to produce the missing transcript, and the First DCA denied that request. Higginbotham v. State, No. 1D19-0371 (Fla. 1st DCA). The First DCA then per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. M.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court notes that a transcript of the March 2, 2016, pretrial hearing was neither included in the state court record during the First DCA's adjudication nor the record before this Court. In any event, transcripts of the March 3, 2016, plea colloquy and the May 4, 2016, sentencing hearing, which are part of both the state court and this Court's record, refute Petitioner's argument that trial counsel failed to advise her of a state offer.

During the March 3, 2016, plea hearing, the parties and the trial court discussed the May 2, 2016, hearing; the state's plea offer; and confirmed Petitioner's rejection of that offer:

17

MR. KURITZ: Your Honor, I spoke with my client and she still wishes to proceed with the plea that we had yesterday. It was a plea straight up to the Court.

THE COURT: Very well. And what I'm going to do is take the plea colloquy from the top to make sure that the record is clear and that everything is as of today. I will pass this plea of guilty and negotiated sentence document to you. In other words, the plea colloquy was started yesterday, but I'm going to start from the beginning.

. . . .

THE COURT: And, for the record, this was addressed yesterday, since I'm starting from now, this is a plea and negotiated sentence in a very small way, meaning the negotiated portion is that the State agreed to drop Count 2 in Case 16-2015-CF-005286. Is that accurate?

MR. MANTEI: Yes, it is, Your Honor.

MR. KURITZ: Yes, Your Honor. And on the back, above the signature line, we executed it yesterday, we've actually redated and initialed it.

. . . .

THE COURT: So you were certainly able to read and understand this plea of guilty and negotiated sentence document front and back; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: In fact, I passed your case temporarily yesterday to give you time to review the document; is that accurate?

THE DEFENDANT: Yes, ma'am.

18

THE COURT: Did you read everything in both -- on both sides of this document?

THE DEFENDANT: Yes, ma'am, I did.

THE COURT: And is the entire document true and correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did Mr. Kuritz explain this document to you completely?

THE DEFENDANT: Yes, ma'am.

THE COURT: And did he go over with you all possible defenses that you may have?

THE DEFENDANT: Yes, ma'am.

. . . .

THE COURT: Are you fully satisfied with Mr. Kuritz's representation of you in both of these cases?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has Mr. Kuritz done everything that you have asked him to do in terms of defending your case, including taking all depositions, talking to all witnesses and providing you with copies of all discovery, including tapes, videos, depositions and statements?

THE DEFENDANT: Yes, ma'am.

THE COURT: Is there anything else that you would like Mr. Kuritz to do before you proceed forward with your plea of guilty?

THE DEFENDANT: No, ma'am.

. . . .

THE COURT: I think we should address the guidelines on the record. Would you place them on the record, Mr. Mantei.

MR. MANTEI: Yes, Your Honor. I calculated the criminal punishment code score sheet for this defendant, including -- accounting for the count that's been nolle prossed, and the State's calculation shows that based upon the current charges, as well as the defendant's prior record, her minimum score, months in prison would be 119.7; her maximum years of exposure would be 200.

THE COURT: And is there a guideline score sheet that could be shown to Mr. Kuritz and the defendant in this case?

MR. MANTEI: I've previously provided one.

MR. KURITZ: It was provided yesterday, Your Honor. Actually, I guess, madam clerk has a copy now.

THE COURT: Actually, I think she gave it to me. Just for the record, I'd like to pass it to you and ask you if you would show it to your client during this proceeding, and just state on the record if you agree it's been calculated correctly.

And just for the record, I decided yesterday in the middle of the plea colloquy to pass this case to today, just to give a little bit more time for the defendant to make a decision. There was a State offer that was open as of yesterday. For the record, is there currently a State offer?

MR. MANTEI: In view of the defendant's plea, I guess

> that's a moot issue.
>
> THE COURT: Very well. So it would be fair to say there is no State offer at this point?
>
> MR. MANTEI: Not anymore, Your Honor.
>
> MR. KURITZ: Your Honor, I've gone over that with my client. She and I looked at it together. It is the same one I was provided yesterday.

Resp. Ex. B at 85-115. Trial counsel then requested that a presentence investigation report be prepared for sentencing. Id. at 115.

During the May 4, 2016, sentencing hearing, the state explained, "the original offers that I made in this case started at 15 years and worked up from there. And I don't think anything less than 15 to 20 years is appropriate for this defendant's behavior." Id. at 141. In response, trial counsel acknowledged the prior offers and requested that the trial court impose a downward departure sentence:

> we chose to enter pleas straight to the Court because it's our thought that due to the nature of the defendant, the 15 to 20 was too high. The guidelines sentence, you know, the bottom is ten years, so not to exceed ten years. But contemplate a downward departure that would put her in the Phoenix House, and put her on probation to begin repayment and to prevent her from being employed in finances.

Id. at 146. The trial court denied trial counsel's request and imposed a cumulative eighteen-year term of incarceration. Id. at 151.

This evidence shows that trial counsel discussed available state offers with Petitioner, but Petitioner strategically decided to plea "straight to the court" and request a downward departure sentence. As such, Petitioner cannot demonstrate counsel was ineffective. <u>See</u> <u>Stano v. Dugger</u>, 921 F.2d 1125, 1152 (11th Cir. 1991) (recognizing that the record of the plea proceedings may contradict any subsequent claim that counsel's representation was deficient). Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground two is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[7]

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of June, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Karen Higginbotham, #J57021
      Counsel of record

---

[7] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.